R. R. TINGLEY, PLAINTIFF IN ERROR, v. R. F. PARSHALL, DEFENDANT IN ERROR.

**Principal and Agent:** CONTRACT: CONVERSION: DEMAND. Where, by the terms of a written contract, one P. constituted T. his agent to loan money and take securities for the payment of the same, and expressly provided that the authority could be revoked at the request of P. in writing, *Held*, that a demand for the securities in writing, signed by a party claiming to be an attorney of P., without an order in writing, or proof of his authority, was not sufficient to authorize P. to maintain an action for the face value of the securities.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*Brown, Ryan & Brown*, for plaintiff in error.

*L. C. Burr* and *W. R. Kelly*, for defendant in error.

MAXWELL, CH. J.

This is an action brought by R. F. Parshall as principal, against R. R. Tingley, to recover the face value of certain notes and securities claimed by the principal, which it is alleged Tingley as agent refused to deliver

up. Judgment was rendered in the court below in favor of Parshal for the sum of $2,894.81. Tingley brings the case into this court by petition in error.

This is not an action for an accounting but for conversion, and had this fact been kept in view on the trial, a large amount of testimony, which does not appear to be relevant to the issue, might have been excluded.

It appears from the record that in the year 1872, the plaintiff and defendant entered into a written contract whereby Parshall did "make, constitute and appoint said R. R. Tingley his true and lawful agent to check out and loan and invest any funds or money that he the said R. F. Parshall may deposit or cause to be deposited to the use of said party of the second part in any bank agreed upon by both parties, to take such securities for the payment of said moneys loaned, with the interest that may accrue thereon, as the said party of the second part may think best; to use all lawful ways and means to collect all notes and other evidences of indebtedness taken or purchased by the party of the second part; to release all mortgages on payment having been made in full to proper parties; to receipt for all moneys in satisfaction of judgments, and to do all business necessary in connection with such loans. All moneys to be let at no higher rate than lawful interest. All notes made payable to R. F. Parshall and made payable to some bank agreed upon by parties, and all transactions and contracts to be made in the name of R. F. Parshall, checks and receipts signed R. F. Parshall in the hand-writing of R. R. Tingley as agent. At any time said R. F. Parshall may choose himself or any other agent to attend to his business, said party of the second part agrees at any time to turn over to him or an agent selected by him, all notes and other evidences of indebtedness taken by the said Tingley for R. F. Par-

shall.   The said party of the second part agrees for himself, his heirs, executors, administrators, or assigns, that he will be responsible for all losses incurred in the handling of said funds, and will account to the said party of the first part or his legal representatives for all funds so checked out of said banks, with interest at 12 per cent per annum.   And that he will, at the request of said party of the first part *in writing*, pass over or cause to be passed over to him or his representatives, all notes, securities, moneys, belonging to him," etc.

This instrument is signed by Parshall.   It is claimed that the instrument was afterwards varied by parol as to the compensation to be paid Tingley, and releasing him from his guaranty.   To what extent in those particulars the contract was varied it is unnecessary now to enquire.   Tingley received from Parshall $6,171.08. In May, 1873, one Beatty, a son-in-law of Parshall, made what purports to be a settlement with Tingley, and found that the profits derived from the loans amounted to the sum of $2,694.85, and the commissions due Tingley amounted to the sum of $898.25, and that the assets in Tingley's hands amounted to the sum of $7,967.45.   It also appears that prior to 1878, Tingley had repaid Parshall more than $7000, and had also conveyed a quantity of real estate, the consideration of which is in dispute.   But it is conceded that the amount paid to Parshall is nearly or quite equal to the original loan at 12 per cent interest thereon.   In April, 1879, the following notice was served on Tingley by a constable:

"Lincoln, Nebraska, April 12, 1879.
"To R. R. Tingley,

" You will please take notice that according to the agreement made between us, February 21, 1872, for the loaning of moneys by you as my agent, I do hereby

request you to pass over or cause to be passed over to me or L. C. Burr, as my representative, all notes, securities, etc., belonging to me.

"Yours respectfully,

"R. F. PARSHALL,

"By (name of the attorney), Attorney."

This action was commenced on the 1st day of May, 1879. The testimony fails to show that any notice in writing signed by R. F. Parshall has ever been served on Tingley, or that Tingley had any notice or knowledge that the party signing the name of Parshall to the above notice was lawfully authorized to do so. No action had been commenced, and an attorney as such had no authority to give such notice. And even if there had been authority to give the notice, the constable had no authority to receive the notes and securities. The court refused to give an instruction, that the evidence as to the authority of the party signing the notice was not sufficient to entitle him to receive or for Tingley to deliver the assets to him. In this there was error. The parties by their own express agreement have provided the mode in which Parshall may terminate the agency and Tingley deliver the securities. The parties may waive the mode agreed upon, but there is nothing in the testimony tending to show any such waiver. But it is said the notice complies with the terms of the agreement, being signed by the attorney of Parshall.

Section 7 of Chapter 3 of the Revised Statues of 1866, provides that an attorney has power to execute: "I. To execute in the name of his client a bond for an appeal, certiorari, writ of error, or any other papers necessary and proper for the prosecution of a suit *already commenced.* II. To bind his client by his agreement in respect to any proceeding within the scope of proper duties and powers; but no evidence of

any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court.  III. To receive money claimed by his client in an action or proceeding, during the pendency thereof or afterwards, unless he has been previously discharged by his client, and upon payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment." Comp. Stat., 65.

The authority to give notice to an adverse party of the termination of his agency for another, at least before the commencement of an action, is not among the express or implied powers of an attorney.   Such notice must come from the principal and not from an employee, unless he is specially authorized for that purpose.   The authority of an agent may be terminated by the limitation of the power to a particular time; by the execution of the business which he was constituted to perform; by a change in the condition of his principal; by express revocation of his power; and by the death of the principal.  2 Kent's Com., 643.

The notice in this case was a demand upon Tingley for the securities in his hands.   This should have been signed by Parshall.   The agent had a right to know that it was his act, and also to be protected by his order in delivering securities to a party claiming to be his agent.   As there is an entire failure of proof in this regard, it is decisive of the case, and it is unnecessary to consider the other errors assigned.   It is apparent from an examination of the record that the object of the contract between the parties was to loan money at usurious rates of interest.   And while that purpose does not appear in the written contract, it is clearly shown by the record, and the principal ground on which this action is based is to recover for interest in

excess of twelve per cent. Whether the guaranty in the written contract extends to this excess may well be doubted. The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.